Ruffin, C. J.
 

 Differences having arisen between Joseph Steel and his wife, the friends of the parties interposed and effected a reconciliation in June, 1812; and they afterwards .cohabited together until his death, intestate, in 1818. As a
 
 *453
 
 part of the arrangement, Joseph Steel, “for and in considera - tion of an agreement, heretofore entered into for the purposes hereinafter mentioned, and of the sum of,” &c. conveyed to David Mebane, in fee, a part of the tract of land on which he resided, including his dwelling house and farm houses and containing 150 acres, three slaves and other personal chattels therein mentioned, “ upon trust, nevertheless, that said Mebane should hold the said land, slaves &e. to the use of Nancy Steel, wife of the said Joseph, for and during her natural life, and after her death to the use of her children by the said Joseph; & the said Mebane, in execution of the trusts hereby intended to be created, may lease out the lands and hire out the negroes aforesaid, and sell the household
 
 &
 
 kitchen furniture, stock of cattle, horses and sheep, or any part thereof, and place the money out at interest, or apply the same towards the maintenance of the said Nancy during her life; it being the object and intention of the said Joseph to settle in the hands of the said Mebane a decent maintenance and support for his wife Nancy over and above her claims to dower, and to secure an interest in the property aforesaid in remainder to the children of the said Joseph on the body of the said Nancy begotten.” Upon the execution of the deed, Mebane took possession of the estates and effects, and hired them to Steel, the husband, for a year, and took his bond with surety, for the hires and rents; and he so continued to do from year to year, as long as Steel lived. Steel made no direct payment on the bonds, but at his death they were held by Mebane, the trustee; nor is any communication made to appear between any of those parties on the subject of such payment. The intestate left four infant children, who are the present plaintiffs; aud administration was taken of his estate by the same David Mebane and Mrs. Steel, his widow, who made sale of the personal property, not including any part of that conveyed to Mebane. At that sale Mrs. Steel purchased, amongst other things, a negro named Allen. In 1823 she was also appointed the guardian of all her children. In June, 1825, an account current of the egtate was stated by the administrators, upon which appeared a balance of $279 .67 in favor of the estate, and in the hands
 
 *454
 
 of Mebane; which balance he then paid to Mrs. Steel, as guardian, and took her receipt therefor. In that account the administrators were charged with the price of the negro Allen, as sold to Mrs. Steel, and were credited with the bonds before mentioned, which were given by Steel to Mebane for rents and hires, as a disbursement.
 

 The intestate’s children have brought this bill against Mebane and Mrs. Steel, in which they elect to have the sale of the slave Allen declared void, and claim him and his hire; and they pray for an account of their father’s personal estate; and insist, that the deed to Mebane did not create a separate property in the wife, but only an ordinary trust for her, which vested in the husband; and also insist, that the bonds for rents and hires ought not to be set up against their father, even if the deed did create such separate estate, because, as they allege, their mother resided with her husband and was supported by him. The bill also charges various acts of neglect of duty in Mrs. Steel, as guardian, and the improper application of the funds of the wards; and prays an account against her as guardian. Mrs. Steel by her answer states that she gave the full value of the slave Allen, and has always considered him as her property; but submits to surrender him, if the court deem it proper; and, after offering explanations of several of the charges in the bill, she submits to account as prayed. But both of the defendants state, that the deed by the husband was intended to settle the property to the
 
 sole
 
 and
 
 separate
 
 use of Mrs. Steel, during her life, independent of all control of the husband; and insist on that construction. They also state that the bonds for rents and hires were taken for the use of the wife by the trustee, in the discharge of what he supposed to be his duty; and, that, being outstanding at the death of the husband, they were considered the property of the wife, and delivered to her as such, and by her were used in paying for her purchases at the administrator’s sale. The answers were replied to, and the settlement and a copy of the administration account filed as exhibits; and the cause was set down for hearing and transferred to this court without further evidence.
 

 
 *455
 
 The cause must, of course, go before the master to take the guardian accounts; of which there has been no settlement. So it must likewise, in respect of the administration account; for the plaintiffs are not concluded by the acquittance given by their mother, as their guardian, for the balance appearing upon that account. In the first place, the guardian was one of the personal representatives, herself. And, in the next place, the plaintiffs have established at least one error in that account, namely, that arising out of the supposed sale of the negro Allen, for the delivery of whom and for his hires the defendant Mebane will be liable to the plaintiffs, in case the other defendant, Mrs. Steel, should be unable to answer them. And in the third place,it is probable the plaintiffs may establish other errors therein, and especially that their father’s bonds for hires and rents ought not to be credited to the defendants.
 

 But, before sending the case-to the master, the parties have asked for such directions as will enable the master to know, whether the property conveyed by Steel to Mebane is to be regarded as Steel’s or his wife’s; and we will proceed to consider that question, which is, indeed,- the principal one in the case. As husband and wife are but* one person in law, no separate property can be held by the l atter independent of the former and of his creditors, much less can those persons contract with and convey to each other. But it has long been settled in Courts of Equity, that personal chattels may be so given to the-wife, as, in exclusion of the husband, to belong to her alone in the same manner as if she were single. This is effected, generally, by a conveyance to a trustee, for the sole and separate use of the wife. But it is not essential, that the conveyance should be to a trustee; lor if the intent be clear, that the wife shall enjoy as a
 
 feme sole,
 
 the husband, who takes the legal interest by marital right, will be converted into a trustee for her-
 
 Bennet
 
 v.
 
 Davis, 2
 
 P. Wms. 316;
 
 Parker v.
 
 Brooke, 9 Ves. 583. Itis likewise established doctrine, at least in England,- that husband and wife may make an immediate gift to each other- As an instance of a gift from the wife to the husband may be mentioned that, for which-the plaintiffs here contend: namely, when she author
 
 *456
 
 isos oí permits him to receive the profits of her separate es- and apply them through a course of years to the support of their family.
 
 Powel v. Hawley,
 
 2 Pr. Wms. 82;
 
 Milnes
 
 v.
 
 Bush, 2
 
 Ves. Jr. 488. So, gifts from the husband to the wife are supported in equity, when they are clearly established. It is indeed, difficult to establish them satisfactorily, as it is necessary to shew a clearintent, and an act done to divest the husband of an interest and vest it in the wife.
 
 Elliott
 
 v.
 
 Elliott,
 
 1 Dev. & Bat. Eq. 57. But when such intent and act are shewn, the gift has been supported.
 
 Lucas
 
 v.
 
 Lucas,
 
 1 Atk. 270. As ii the husband transfer stock held by him into the name of his wife, or of himself and his wife.
 
 Rider
 
 v.
 
 Kidder,
 
 10 Ves. 760;
 
 George
 
 v.
 
 Bank of England,
 
 10 Price 646. Now, in all instances of such direct gifts to the sole use of the wife, if allowed at all, they
 
 must
 
 be supported as gifts to the sole use
 
 of the wife;
 
 and the husband is her trustee. Atherly on Marriage Settlements, 331. That is nesessarily soj for in that way only can the gift be effectual. It must be inferred, therefore, that the parties intended to create a separate property for the wife. The same reason seems equally to apply to a conveyance of personal chattels by the husband to a trustee to the use of the wife. For, ordinarily, if the wife be entitled as
 
 cestui que trust
 
 to the present profits of personal chattels, she is regarded in equity as the owner in possession; and consequently, they immediately vest in the husband.
 
 Murphey
 
 v.
 
 Grice, 2
 
 Dev. & Bat. Eq. 199. Therefore the maxim,
 
 ul res magis valeat quam pereat,
 
 which is a sound principle of construction, applies to such a trust, when created by the husband, and makes it one for the separate use of the wife. Unless it have that operation, it has none' at all, and is' a futile ceremony, merely to pass the equitable estate, through the wife,
 
 to the
 
 husband, from whom it emanated. Hence, Mr. Roper (2 Roper on Husband & Wife, 157,) in speaking of the clauses and expressions, that are sufficient to raise a trust for the separate use of the wife, says, “that whenever it appears either
 
 from the nature of the
 
 transaction, as in the instance of a settlement in contemplation of marriage,
 
 where the husband is a party,
 
 or from the whole context of the' instrument, that
 
 *457
 
 the wife was intended to have the property to her
 
 sole
 
 use, that intention shall be carried into effect in equity.”— Clearly, he conceives that a settlement to
 
 the use
 
 of the wife, by the husband, or to which he is a party,
 
 per se,
 
 has the character of a settlement to the
 
 separate use
 
 of the wife, though it be not so fully expressed. In that opinion he seems to be entirely sustained, not only by the reason of the thing, but also by the adjudication he cites. That is the case of
 
 Tyrrell
 
 v.
 
 Hope, 2
 
 Atk. 558, in which a élause, containing a stipulation by the husband “ that the wife should receive and enjoy the profits of an estate of hers,” created a trust in the husband to her separate use. As was pertinently asked there, to what end should the wife receive the profits, if they became the husband's the next moment? So, in this case,why should a trust be created for the wife by the husband,
 
 which, ipso facto,
 
 became a tru'st for the husbarid? But, besides this being a trust created by the husband himself, when we consider the circumstances, under which the deed was executed, and the mode, in which all parties acted un_ der it, and the particular language emplo'yed to declare the objects of creating the trust, there can be no doubt as to the intention of the parties, or the construction, that must be put upon the instrument. In the first place,- the object was to' make
 
 a certain
 
 provision for the wife and the children of the marriage, as against the acts of the husband; which was supposed by the parties and their friends to have been rendered necessary by the causes,- which led to the family dissensions that had existed. In the next place,- the husband leased and hired the property from the trustee; which is altogether inconsistent with the idea, that the parties supposed' or intended, that the profits belonged to the husband in any way. Next must be noticed the recital in the deed, that it was made “ in consideration of an agreement heretofore entered into for the purposes hereafter mentioned.” Then, after declaring the trusts for the wife and children, follows a power to the' trustee to sell all the property, except the land and slaves, and apply the interest of the proceeds or the capital — of course, during the coverture as well as after the death of the
 
 hushand
 
 — to
 
 the maintenance of the toife:
 
 “It being the ob
 
 *458
 
 ject and intention"(as stated in the deed)tp settle in the hands of the trustee a decent maintenance and support for the wife) and to secure an interest in remainder to the children.” In
 
 Dorley
 
 v.
 
 Dorley,
 
 3 Atk. 399, Lord Hardwick thought “ a gift to the husband or a trustee for the wife’s livelihood” sufficient to repel the husband’s claim, and give the interest to the wife as a feme sole. “ Maintenance and support,” by themselves, are equally strong; and much stronger, when the' property is
 
 settled
 
 (away from the husband)
 
 in the hands of a trustee,
 
 whose express duty it is made to provide a decent support for the wife, not merely out of the profits, but if need be, out of part of the capital. It seems, therefore, to be past contradiction, that a comfortable provision for the wife,
 
 personally,
 
 was intended, and that it should be as effectually
 
 settled on her,
 
 as that for the children was
 
 secured to
 
 them: that is to say, that both should be beyond the control of the husband and father. Every purpose of the parties would be frustrated, by not considering the deed as creating a separate estate in the wife. With respect to the rents and hires, the facts do not sufficiently appear to enable the court with entire confidence, to determine, whether the husband’s estate should be charged with them or not. The general rule is, if there be an-express gift to the husband by the wife of her separate estate, or if one can be implied, as from the receipt by him of the income of her estate by her direction or permission and employing if in the support of his family including the wife: that, in such cases, the wife cannot charge the assets of the dead husband^for the money thus received) and applied; or, at most, for not longer than the year next before his death.
 
 Pawlet
 
 v.
 
 Delaval, 2 Ves.
 
 667;
 
 Squire
 
 v.
 
 Dean,
 
 4 Bro. c. c. 326;
 
 Peacock
 
 v. Monk, 2 Ves. Sr. 190. Here, the husband did not
 
 receive
 
 the rents; but he had the pernancy of the profits in fact, and gave his bonds for the amount, and fqr five or six years paid nothing on those bonds. At present we will not say, that the non-payment of the bonds by the husband is equivalent to a receipt of rents from other persons; though there would seem to be, essentially, little or no difference, and the case is very much like that of pin-money in arrears. If no other act was done, by way of asserting a
 
 *459
 
 continuing claim to the money, but merely the keeping the bonds by the trustee, as if neither the wife nor trustee by her direction demanded payment nor a renewal of the bonds, there would be much reason to suppose, either that the wife had given the money to her husband, or, rather, that she was satisfied with the manner, in which he was employing it for the benefit of herself and her children. But we are not willing to determine the cause on that point singly, because it is probable, that, on an enquiry, facts will be ascer tained which will put the question beyond doubt, one way or the other. As the deed included the family mansion and all its furniture and the stocks of horses, cattle and sheep, it is apparent that it was expected the wife should have the use thereof, as that most beneficial as well as agreeable to her by the continued residence of the family on the land. We collect from the deed and the sale of the husband’s property, after his death, that, probably, the settlement covers the principal part of his estate; and, therefore, that it might be, that the immediate support of the wife and family was to be drawn chiefly from this property. Now, if the family could not have lived without the use of this property, and if, by the use of it, the husband did’ maintain them, the wife’s acquiescence in the non-payment of the bonds with' money is accounted for; and upon a principle, which shews that she considered herself paid and never intended and never oughtto have demanded any other payment. Now, the bill charges, substantially, that such were the facts. But although not denied, that is not admitted in the answers; which merely say, that after the husband’s death, the defendants considered the bonds the wife’s property and treated them accordingly. It is not stated, that there was no communication on this subject between the husband and wife; that she did not agree that she would not and that her trustee should not call for payment; or that the use of this property was not necessary to keep the family together and maintain it descently, or, that the husband could, without ruin or inconvenience, have maintained his family, as he did, and also paid their rents and hires. It is, therefore, desirable to have an enquiry on those points, that we may know, -how the defendants account for requiring
 
 *460
 

 no
 
 payment from the husband during his life, and if there was any reason for it, except that the husband maintained the family to the value of the rents and hires, and that they were necessary for their proper maintenance. On the contrary, all presumptions of a gift may be repelled by its appearing that the wife did not acquiesce, but sought payment, though ineffectually, or otherwise asserted her rights as a creditor of her husband; in which event her present claim would seem the more reasonable. The court, therefore, directs an enquiry as to all these facts, with liberty to the parties to have any special matter stated, whi.ch, in their view may affect the decision; and with liberty also to have the parties examined on interrogatories.
 

 Per Cpriam, Ordered accordingly.